## Case No. 3,694.

### The D. C. SALISBURY.

#### [Olc. 71.] [1]

District Court, S. D. New York.   Nov. Term, 1844.

MARITIME LIENS—WHAT ARE MARITIME SERVICES —VESSEL TOWED ON TIDE WATERS—WAGES OF MASTER.

1. A mariner, rendering services on board of a vessel carrying coal between Philadelphia and New-York, upon tide waters, though she be stripped of sails and masts, and be towed by steamboats, may proceed in rem against such vessel for his wages.

2. Every service rendered by a mariner, contributing, in contemplation of law, to the management, safety or benefit of the vessel, is so far maritime as to carry a privilege against the vessel.

[Cited in The Norfolk, Case No. 10.297.]

3. The services will be deemed maritime if substantially performed on waters within the ebb or flow of the tide.

[Cited in The General Cass, Case No. 5,307; The Atlantic, 53 Fed. 609.]

4. If the services of libellant were those of master, or were merely those of taking and discharging cargo at the wharves, and in no way connected with the navigation of the vessel, the lien would be denied.

A. Nash, for libellant.

G. R. J. Bowdoin, for claimant.

BETTS, District Judge. The boat was arrested in rem for services by the libellant on board, in loading, navigating and unlading her. It was admitted by the respondent that five dollars was due for his labor; and the question raised and discussed by counsel is, whether the libellant for this claim has a lien upon the vessel which can be enforced in this court. The boat is of about forty-four tons burden, and is licensed and enrolled as a coasting vessel. Her employment, since the libellant was attached to her, has been in transporting coal from Philadelphia to New-York by the way of the Delaware river and the Raritan canal and river. She is towed by steamboats to, through and from the canal, and the men on board perform no other seamen service in her navigation on tide waters than aiding in steering her at particular times of tide, and occasionally at particular points on the passage. The case is distinguishable from that of Davis v. The Enterprise [Case No. 3,632], decided in this court in October. 1842, and the cases before Judge Randall, in the Pennsylvania district court, cited on the argument, for in each of those cases the hiring was essentially for services on canals, and those rendered on tide water were merely incidental. Here, so far as the circumstance of the locus affects the question, the principal service was to be rendered in navigating to and from the canal on tide waters. In reducing the controversy to this point, there is left for consideration only the inquiry, whether these particular services were of a maritime character, and on board a vessel subject to the maritime privilege.

The claimant contends that the circumstance of the boat not being self-impelled takes her out of the class of vessels subject to liens for wages. If she was used chiefly on a canal or internal waters, or only as a lighter in removing cargo to or from a vessel, or in carrying produce to market and managed by landsmen; or if she was one of those small floats or craft attached to other vessels, and employed in no other way than as adjuncts or assistants to such vessels, the boatmen might have a difficulty in maintaining a lien upon her for their labor. Should this be so in respect to equivocal cases of that class, it seems to me there is a difference between them, and one where a vessel has all the properties of a sea vessel except the use of self-propelling means; and that an exemption from lien placed on the latter circumstance must be attended with great perplexity and ambiguity in its application. If a vessel of forty-four tons burden, employed in carrying freights coastwise from one state to another, because having no sails or propelling machinery is excluded from the class of maritime vessels, what principle would bring one of ten or twenty times that burden, under like circumstances, within the class? Or upon what basis is the rule to be established, that upon vessels not having, or not using self-propelling means, the boatmen or hands can have no lien, while upon the other class they shall have a charge, with the right of enforcing it in admiralty?

I assume it will not be controverted, that a ship or schooner, brig or sloop, with all her rigging and tackle on board, would be subject to the lien of her crew for wages, though towed by a steam vessel from Philadelphia to New-York, and never, in any way, on the voyage, employing her sails, or even having her rudder moved by the crew. The kind or amount of duty performed by the men on shipboard in no way determines the character of their remedy. They are there to serve as directed, and those engaged in the lowest and least valuable grades of service have a common privilege for the recovery of their wages with pilots, sub-officers and sailing masters. And in relation to the craft itself, there is no distinction between one so equipped, and the like vessel stripped of sails and masts. And accordingly, should it become the course of the coal-trade between Philadelphia and New-York to dismantle of rigging and spars the large vessels now employed in that navigation, and using only their hulls, have them towed by steam-tugs, the men engaged in the management of such vessels would be no less entitled, because of that change of apparel and method of management, to proceed against them in rem for the security of their wages. It is never a question how far one shipped to sea duty actually aids in the navigation of a vessel,

[1] [Reported by Edward R. Olcott, Esq.]

or in what way his services are rendered, in order to determine his right to a lien. If he is attached to her, ready to render such services as may be required of him in his place, it is sufficient; every service rendered on board which contributes, in contemplation of law, to the management, safety or benefit of the vessel, has a maritime character and privilege. Thus stewards, carpenters, chambermaids and surgeons have their lien for wages the same as if stationed before the mast; the law regarding the ship's complement as all ministering to the aid and protection of the vessel on her voyage, and never stopping to ascertain or inquire the quality or value of the service of the one in comparison with that of another.

In the case of the steamboat Thomas Jefferson, the supreme court held that the service was to be deemed maritime, if substantially performed on waters within the ebb and flow of the tide. 10 Wheat. [23 U. S.] 428. This was no doubt decided essentially in respect to services, admitted to be of a maritime character, if performed at sea; but yet the case carries an import beyond any special regard to the kind of labor, and implies that the ship's company any way employed in duty on board on tide waters, are entitled to the privilege. Judge Hopkinson struggled earnestly to discover a rule which should fix with precision the discrimination between services essentially maritime, and those claimed to be such from being merely performed on shipboard at sea or on tide water,—Thackarey v. The Farmer [Case No. 13,852]; Trainer v. The Superior, [Case No. 14,136],—and was free to acknowledge his want of satisfaction with the effort. He may have suggested instances not falling within the doctrine, but his admission of the scope of the rule is ample enough to embrace the case of a crew attached to a licensed coaster, passing from state to state through tide water. He concedes that it applies to river craft navigating the Delaware on tide water, and its force would not be diminished if the vessel, adding thereto the transit of a canal, performed another tide water voyage to the place of her destination. I suppose that there is no ground for question that this coal boat, employed as a freighter, would be subject to a lien for the libellant's wages on board, if she had been worked on her voyage by aid of his bodily labor, with oars or setting-poles; for the law does not impart to a service on shipboard the character of maritime, for the reason that it is applied to the vessel in any special manner, or that she is moved by its agency or otherwise; nor that the service requires nautical experience, or skill, or aid on the part of the crew; it is so only because the vessel is on a sea voyage, and the crew is employed some way to assist in furthering it. I can-

not perceive that there is any difference in principle whether the means of motion are derived from or controlled by the crew, or are contributed aliunde. The quality, or quantity, or source of the motive power might enhance, diminish or dispense with the labor of the crew, but could supply no criterion by which to determine whether their services during the passage were maritime in character; and I cannot, in view of the principles recognized in the adjudged cases, discover any principle governing the question other than the simple one before indicated, that the vessel is engaged in a maritime voyage, and that the party seeking a lien upon her was hired and rendered services on board connected with her employment.

In the case of The Ontario [case unreported], decided in this court in 1838, and affirmed on appeal to the circuit court, the lien was denied for two reasons: (1) That the libellant, if connected with the boat in any manner, was so as master, and not as a hand or mariner; and (2) because the services were merely those of taking in and discharging the cargo at the wharves, and in no way connected with the navigation of the vessel on tide water. But it seems to me, upon the brief sketch of facts furnished in this case, that I am to regard the libellant as hired to perform all the services on board this vessel required in her loading and unloading, and in effecting her passage up the Delaware, on tide water, down the Raritan, through the Kills, and across New-York Bay, all also tide waters. In this shape of the case, his right and remedy cannot be affected by the method of her being propelled, or the degree of aid contributed by him to her navigation. The demand is trivial in amount, but the principle which determines it must be the same as would have governed the case had a whole year's wages been in arrear. This case also in some measure illustrates the utility of the rule as applicable to vessels of this description. The answer denies the right of the person hiring the libellant to give him any security on the vessel for his wages; and without this remedy, men of his class might often be put to great difficulty and expense in finding and charging the proper persons with the payment of their earnings. If it is understood that the vessel stands responsible on such contracts to her men, it gives the assurance of prompt and full payment for their labor, and this important and growing branch of trade, as well as others under like circumstances, will have at command all the services that may be demanded to insure its active and profitable prosecution. I shall, therefore, order that the libellant recover five dollars, the balance of wages admitted to be due him, and summary costs, to be taxed.